# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-01091-SCT

*MARK D. WHOLEY, M.D. AND JOHN A. RODGERS*

*v.*

*CAL-MAINE FOODS, INC., A CORPORATION; AND*
*CAL-MAINE EGGS, INC., A CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/95 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | DON ROGERS |
| ATTORNEYS FOR APPELLEES: | FRANK T. MOORE, JR. |
| | JAMES H. NEELD, III |
| | TODD INMAN WOODS |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | AFFIRMED - 7/24/97 |
| MOTION FOR REHEARING FILED: | 8/6/97 |
| MANDATE ISSUED: | 10/16/97 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. The present case calls upon this Court to review the ruling of a Chancellor, following a trial on the merits, in which the Chancellor denied an equitable accounting to two limited partners allegedly defrauded by a corporation with which their limited partnership had contracted. This Court concludes that the Chancellor's ruling was supported by substantial evidence and was not manifestly in error. We accordingly affirm.

## II. STATEMENT OF THE FACTS AND CASE

¶2. On June 11, 1973, National Farming Program 1973 (NFP '73) was organized under Mississippi law for the purpose of engaging in a farming business involving the production and sale of shell eggs

from partnership owned flocks of hens. Each unit of the partnership sold for $ 1,000, and at least 380 investors purchased units in NFP '73 and became limited partners in the partnership. Two of those investors are the appellants in the present case: Dr. Wholey and John Rodgers, who each invested $ 5,000. A prospectus was developed for use in conjunction with the public sale of partnership units, and the partnership agreement was included within the prospectus.

¶3. NFP '73 invested its capital in flocks of egg laying hens. These flocks were managed by Cal-Maine Eggs (CM Eggs), which corporation served as the general partner of the partnership. CM Eggs is a wholly owned subsidiary of Cal-Maine Foods, Inc.(CM Foods) and the two companies share the same board of directors. NFP '73 purchased all of its feed, hens, and medicine from CM companies and sold all their eggs and old hens back to CM companies.

¶4. For its services, CM Eggs was paid a management fee of one and a half cents per each dozen eggs produced. This fee was fully disclosed in the prospectus, and the appellants do not contest said fee. The prospectus also represented that each sale or purchase was to be made with either an appraisal or at a price comparable to sales or purchases with unaffiliated third parties. The prospectus further provided that CM Foods would annually report to NFP '73 the details of any arrangement with CM companies of a fee or profit computed on the basis of dozens of eggs produced.

¶5. Wholey complains that these promises in the prospectus were not honored in that no appraisals were ever made, in that CM paid NFP '73 less for eggs than it paid unaffiliated parties, and in that CM Foods never reported that a fee or profit of one half cent to one cent for every dozen eggs was paid to CM Foods (in addition to the one and a half cent per dozen eggs management fee permitted in the prospectus). NFP ceased to exist on December 31, 1978, subject to wind up, and none of the limited partners received any return on their investments.

¶6. On April 2, 1986 Wholey and Rodgers sued CM Eggs and CM Foods for an accounting of undisclosed profits and for the repayment of said profits through the imposition of a constructive trust. The Chancellor dismissed the case based upon the supposed running of the 6 year statute of limitations applicable to fraud, and the plaintiffs appealed to this Court. This Court reversed and remanded, holding that the cause of action was in the nature of a complaint for an accounting and for a constructive trust and that the ten year statute of limitations in § 15-1-39 should properly apply. On remand, the Chancellor dismissed all claims for recovery on behalf of any limited partners other than the two named plaintiffs, Wholey and Rodgers. The cases were tried on February 21-23, 1995, and the Chancellor dismissed the remaining claims of Wholey and Rodgers on September 20, 1995. Wholey and Rodgers once again filed an appeal to this Court.

### III. <u>LAW</u>

**A. Should this Court permit a compensated fiduciary, under the laws of the State of Mississippi, to avoid the consequences of its willful violation of equitable principles and statutory provisions which prohibit a fiduciary from secretly profiting at the expense of the cestui que trust by the artifice of giving advance general notice to the effect that conflicts of interest may arise and profits may be made by the fiduciary in the performance of its fiduciary duties ?**

¶7. The present appeal by Wholey and Rodgers arises from an adverse judgment by the Chancellor sitting as the trier of fact following a trial on the merits. This trial followed a remand by this Court with regard to the issue of whether or not the limited partners were entitled to an equitable accounting for "secret profits" allegedly made by CM Foods during the course of the limited partnership. ***Wholey v. Cal-Maine Foods, Inc.***, 530 So.2d 136, 140 (Miss. 1988). The Chancellor ruled that Wholey and Rodgers were not entitled to such an accounting, and, given that there is no indication that the Chancellor employed an incorrect legal standard, this Court is limited in its scope of review to the issue of whether the Chancellor was manifestly in error in so ruling.

¶8. The facts of the present case raise the suspicion that, assuming that CM Foods was in a fiduciary relationship with the limited partners, CM Foods breached its fiduciary duties by failing to pay the limited partnership prices for its eggs which were comparable to prices paid to non-affiliated producers. However, Wholey and Rodger's proof was lacking as to the issue of whether CM Foods, as opposed to CM Eggs, was in such a fiduciary relationship with the limited partners. In addition, this Court concludes that the Chancellor's ruling with regard to the breach of fiduciary duty was supported by substantial evidence and should be affirmed.

¶9. The Chancellor placed substantial weight on the fact that CM Foods disclosed in the prospectus that it might engage in self-dealing and that it might make substantial profits off its dealings with the limited partnership. This Court initially notes that a party may obviously not engage in any unfair conduct which it chooses as long as such conduct is permitted by the terms of a prospectus. A party could easily prepare a lengthy prospectus in which it grants itself the right to use the funds of the investors at its own discretion for its own personal benefit with no accountability whatsoever, but such a prospectus would amount to little more than larceny in the disguise of an investment and would properly be held to be void as against public policy.

¶10. The prospectus in the present case, however, does not appear to violate public policy, although the provisions of the prospectus do appear to be slanted in favor of CM Foods. Obviously, granting a party the right to set the prices which it will pay to a party which is contractually obligated to sell a given product to said party opens the door to a great potential for abuse. In light of this potential for abuse, one of the most important provisions of the prospectus is the provision requiring that the prices paid for the eggs be made with an "appraisal" *or* at prices "comparable to sales or purchases with unaffiliated parties."

¶11. With regard to the appraisal provision, CM Foods admits that no such appraisal was ever made, and Wholey tacitly concedes that an appraisal of each batch of eggs would have been impracticable. Wholey did introduce certain evidence that CM Foods generally paid NFP lesser amounts for their eggs than it paid to non-affiliated producers. However, as noted by CM Foods, the evidence offered by the limited partners was far from conclusive in this regard. Wholey introduced a comparative analysis of a rather small number of transactions, with little supporting evidence which would confirm that the prices being compared were in fact for similar eggs in similar markets. Ken Looper, who served as Vice-President of the Shell Egg Division of CM Foods, testified in regard to the limited partners summary of evidence regarding the price disparity as follows:

> The summary is misleading. For example, it refers to the outside eggs and NFP eggs. Now, we took all the NFP eggs. The outside eggs are a small number of eggs, and there's a difference in

price of the outside eggs in some occasions than there are the NFP eggs, and the reason for that is that - - the reason it doesn't reflect accurately when you look at the documents, it will show you that those purchases are made at different dates, not on the same date, and the market changes every day, or it's subject to change every day, and can change as much as 10 cents over a short period of time. So as a result, the summary does not reflect that, and it doesn't reflect whether they were large eggs or small eggs, whether they were ungraded or graded, whether they had packing material with them, whether they were delivered or picked up or delivered to some other place.

The testimony at trial indicated that CM determined its prices by applying a gross markup of $.01 per dozen eggs produced, except for goods produced at the Apopka, Florida location, where a gross markup of only one half cent per dozen eggs was applied. Wholey and Rodgers note that the prospectus did not authorize such markups, and they further assert that the millions derived from therefrom constitute hidden profits which are properly subject to an accounting. However, as noted in the Chancellor's ruling, "the testimony at trial reflected that CM Foods consistently applied a gross margin markup in establishing the price for eggs paid to unaffiliated purchasers supporting the theory that the markup was just one factor in arriving at prices generally prevailing in the market area for like merchandise or services."

¶12. In the view of this Court, CM Foods should not be held to have acted improperly for having applied the gross markup, given that testimony indicated that this method of pricing was widely used in the industry and was used by CM Foods in setting prices for eggs produced by non-affiliated companies as well as for eggs produced by NFP '73 flocks. As noted earlier, one of the primary fact issues in the present case is whether CM Foods paid NFP prices for its eggs which were comparable to prices paid to non-affiliated companies. However, the method used by CM Foods in arriving at the price need not have been disclosed in the prospectus as long as CM Foods complied with the requirement in the prospectus that its prices be "comparable" to prices paid to non-affiliated producers.

¶13. It is important to remember that the present action is not a breach of contract action[1] but rather an equitable action for an accounting. At the same time, this Court remanded for a determination of whether "Cal-Maine made secret profits from the limited partnership by breaching its fiduciary duty to the limited partners" and the provisions of the prospectus are thus to a certain extent relevant to whether the profits made by CM Foods were "secret." *Wholey I*, 530 So.2d at 140. The present case thus presents a rather complex blending of contractual provisions and obligations and equitable considerations.

¶14. The issues in an equitable cause of action in a complex factual setting such as the present one are inherently somewhat vague and subject to a great deal of discretion on the part of the Chancellor. This Court concludes that the evidence put forth by Wholey and Rodgers regarding the price discrepancies between the amounts paid by CM Foods to NFP and the amounts paid to non-affiliated companies was not convincing as to dictate a reversal of the Chancellor's ruling. The testimony of Ken Looper raised some seemingly valid concerns regarding the accuracy of the plaintiffs' summary of the information regarding the alleged price discrepancy.

¶15. The Chancellor was able to hear the testimony of the witnesses and to view the plaintiffs'

exhibits setting forth the details of the pricing of the eggs in question, and he concluded that the evidence was insufficient to justify an accounting. A review of the record gives rise to a certain degree of suspicion of improper dealings on the part of CM Foods, but this Court can not conclude that the Chancellor's ruling was manifestly in error or that it was unsupported by substantial evidence in the record. The Chancellor's ruling in denying an accounting is accordingly affirmed.

¶16. As noted earlier, this Court also finds persuasive CM Eggs' argument that, absent a finding that CM Foods, as opposed to merely CM Eggs, was in a fiduciary relationship with the limited partnership, many of the assertions of Wholey and Rodgers would be appropriate only for a breach of contract cause of action which is barred by the six year statute of limitations. It was thus incumbent upon the limited partners to establish that CM Foods as the parent corporation is, in effect, the "alter ego" of CM Eggs and that the separate corporate entities should be disregarded and CM Foods should be held to owe fiduciary duties to the limited partners. Wholey did not sufficiently establish facts or law at trial which would support a finding that the corporate entities should be disregarded, and this Court considers this fact to represent a separate grounds in support of affirming the Chancellor's ruling.

> **B. Disregarding the law of the case as established in the July 27, 1988, mandate of the Supreme Court of Mississippi and the dictates of Sections 79-12-41, 79-12-43 and 79-14-305 of the Mississippi Code by failing to order a partnership accounting, by failing to impose a constructive trust on the fiduciary's self-dealing profits, and by requiring that all 386 of the limited partners join in the action for a partnership accounting and the imposition of a constructive trust; (i.e., If a trustee steals small amounts from many people, can the trustee keep it?).**

¶17. Wholey and Rodgers argue that the Chancellor disregarded the "mandate" of this Court in *Wholey I* by failing to order an accounting and by failing to impose a constructive trust. This argument is without merit. This Court remanded the present case for trial on the issue of whether an accounting was proper, but this Court issued no "mandate" as to the eventual outcome of the trial. Wholey's arguments that various statutes of this State dictated the issuance of an accounting are similarly unpersuasive. Wholey cites Miss. Code Ann. § 79-13-21, which provides that:

> (1) A limited partner shall have the same rights as a general partner to (a) have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable.

Clearly, the aforementioned statute provides no "absolute" right to an accounting, but rather provides for the right to such an "account" when "circumstances render it just and reasonable."

¶18. Wholey and Rodgers also argue that this Court's prior decision mandated that the plaintiffs be permitted to sue for an accounting on behalf of the entire limited partnership. The Chancellor on remand declined to permit Wholey and Rodgers to sue on behalf of any of the other limited partners, and they were allowed to sue solely for an accounting with regard to their own personal interest in the former limited partnership. This Court concludes that this issue is largely moot, given that we have determined that the Chancellor was not manifestly in error in denying an accounting to Wholey and Rodgers. If the Chancellor was not manifestly in error in denying Wholey and Rodgers an accounting, then CM Foods would presumably not have been found liable to any of the other limited

partners either.

### C. Excluding as inadmissible for any purpose all evidence of wrongdoing by the fiduciary during the period which was time barred by the statute of limitations (i.e., If the trustee is not required to pay for pre-April 2, 1976, stealing, can it stop all proof of it?).

¶19. This Court held in *Wholey I* that the 10 year statute of limitations period in Miss. Code Ann. § 15-1-39 was applicable to the present case, which was filed on April 2, 1986. This Court thus remanded solely with regard to any possible right to an accounting arising out of actions on the part of CM Foods from and after April 2, 1976. Wholey and Rodgers do not dispute that they may only recover with regard to actions following this date, but they contend that the Chancellor was in error in denying them the right to introduce any evidence of wrongdoing on the part of CM Foods prior to this date.

¶20. The admissal of evidence is largely within a Chancellor's discretion, and this Court concludes that the Chancellor did not abuse his discretion in limiting the proof to actions taken by CM Foods after the April 2, 1976 date. Given that this Court remanded solely for a determination of Cal Maine's liability after this date, it can not be said that limiting proof to events which occurred after this date was an abuse of discretion. Wholey and Rodgers were able to present the prospectus and other terms of the limited partnership, and this Court concludes that the Chancellor's decision to disallow testimony of events which occurred prior to the April 2 date does not constitute an abuse of discretion. This point of error is accordingly overruled.

¶21. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. A breach of contract action is barred by the six year statute of limitations.